Good morning, Mr. Meskel. Good morning, Your Honor. I see you reserve three minutes for rebuttal and you can begin whenever you're ready. Yes, Your Honor. Thank you. Good morning and may it please the Court. J. Brian Meskel on behalf of Respondent Appellant Rick Stover. Your Honors, under the First Step Act, federal inmates have the opportunity to earn and apply time credits, allowing them to transfer it out of a traditional prison facility sooner than they otherwise would. Time credits do not, however, reduce a judicially imposed term of supervised release. In this case, the district court narrowly focused on several words in the first of two sentences in a subparagraph of the FSA, section 3632d4c, which for ease I'll refer to as the provision. The district court reasoned that the first sentence of the provision can, and in fact must, authorize the reduction of a term of supervised release by some unnamed entity. This interpretation is flawed for several reasons. First, it defies the only possible way to harmonize pre-release custody and supervised release, which are separated only by a conjunction in the first sentence of the provision. If the first sentence requires reduction of supervised release, it must also require the senseless reduction of pre-release custody. Inmates want more time in pre-release custody, not less, and reducing time in it would be to their disadvantage. I don't quite understand that argument, because if you have under 363, I'm sorry, 364, 3624G3 reduction to allow a shortening of time in incarceratory custody, and then you're in pre-release detention, or you move from custody to pre-release detention or supervised release, then as APLE reads it, 363d4c could reduce the amount of time in pre-release custody, thus getting you to supervised release sooner, or, and, I suppose, or, or, and reduce time in supervised release, getting you out of supervision sooner. So I don't, I don't quite understand. I saw that argument in your papers, and I don't quite understand it. Yes, Judge Nathan. So I, I don't believe that was addressed by the district court in its decision, but I do believe the Ninth Circuit and Gonzalez raised that point. I think that interpretation would be a clear violation of, against the rule of surplusage, excuse me. We point out on page 14 of our reply brief, it would mean that the first sentence specifically directs reduction in pre-release custody that can occur only, if at all, as a necessary incident of the operation required by the second sentence, which would be that transfer to supervised release. Well, hang on. So maybe I'm, so as I, I read the whole set of First Step Act changes to the earned time credits, creation of that together, and so I, I begin at 3632d4c. I'm sorry. I did it again. 3624g3. What's your understanding of the meaning of that provision? That provision allows for a inmate to be, to effectively serve less time incarcerated by being transferred earlier to supervised release, not to exceed 12 months. Right. So, so right there you've got a provision which says you can, if you've got earned credits, you can reduce, or your period of in custody, incarceratory custody, or in custody, and you, as I understand it, you want us to read 3632d4c to mean the same thing as that. Well, the, you know, I think both sentences should be read in harmony together. You know, the first sentence explains what, what the system is, and the second, the second sentence explains how the system works. But what, so just, just stick with me on this.  3624g3, you agree with me, allows the reduction in time in custody, so earlier movement out of custody into supervised release. Correct. Isn't that precisely what you're arguing 3632d4c does? Is there anything else you're arguing that 3632d4c does that isn't contained in what we just said, 3624g3? Yes, Your Honor. So, so 3632d4c does two things with the time credits. It allows for that transfer at section 3624g3 to, to supervised release, but it also allows for a transfer to pre-release custody earlier than, you know, a prisoner would otherwise be able to, and 3624g10 actually removes the previous limits that used to be set forth with pre-release custody at 12 months. So prisoners are able to both transition to a less restrictive form of custody in pre-release custody, and then at an accelerated timetable move on to supervised release up to one year earlier. So a prisoner could, could immediately have their sentence to which they would be moving to supervised release moved earlier by a year, and then the remaining time credits could allow them to move and spend more time, a seemingly unlimited amount of time, on pre-release custody. So your, your argument with respect to the district court's interpretation of it, the second sentence according to the district court moves up the time you could be transferred into pre-release custody or into supervised release, and that, according to the district court, the first sentence reduces the amount of time. But you're saying if you can't reduce, if the only way to reduce the amount of pre-release custody time is through the transfer, you don't need to put that in the first sentence, that it's surplusage in the first sentence, because nobody wants a reduction of the pre-release custody time to spend more time in jail. It's just a, a functional reduction based upon the second sentence. That's the argument. Yes, Your Honor. In the district court acknowledged 3624G3's 12-month limit, but at the same time suggested that it would make sense, Congress would offer the potential to reduce time in pre-release custody. But if that, but if the BOP must reduce time in pre-release custody, if a prisoner has reached their 12-month maximum of transfer to supervised release, it would mean the BOP would have to send them either back to a traditional prison facility if they're on pre-release custody, or keep them in, in order to actually be able to reduce a period of pre-release custody. That's why it doesn't make sense. Why wouldn't a reduction of a period of pre-release custody mean movement earlier into supervised release? And, and that's where I think that would, if that were the interpretation, it would be superfluous, because essentially what, what that would mean is that the second sentence is, is the only way to reduce time in pre-release custody by the first sentence. And the other... Well, this, no, I mean, there's a whole provision about reducing time in custody. That, that's sort of my point, which is referenced in the second sentence of the 3632D4C, but we have 3624G3, which, as I understand it, is about reduction of in-custody time. And I assume that means it could include, at the end of your custodial term, movement under the existing provisions into pre-release custody. Or it could mean move... So, I mean, a norm, you impose a normal sentence with a period of supervised release. Let's set aside any credits, either good time or earned credits. Almost everyone goes into pre-release custody prior to release to supervision, right? Yes. And for prisoners without a term of supervised release, that would be their only option. So you don't need a, you don't need a provision saying you could, you don't need one of these provisions to say you could transfer into pre-release custody. That's already true. Everyone, almost everyone serving a term of incarceration will spend a period of time on pre-release custody, right? Yes, Your Honor. Okay. So you serve your period of time of incarceration. 3624G3 says you get credit, earned credit up to 12 months to move sooner into pre-release custody. To supervised release, Your Honor. Well, right. Yeah, it's true that it does say supervised release, but I guess I interpret this provision to mean you can go from custody, which would include pre-release custody, into supervised release. Respectfully, Your Honor, so I think 3624G2 governs pre-release custody, and then G3 is separate for supervised release. Okay. So, so, so walk me through G2. Gives you the types of pre-release custody. Right. And it notes the types of pre-release custody. It allows for prisoners to transfer into pre-release custody, and then 3624G10 actually removes the previous limits that were sort of left over from the Second Chance Act in 3624B1 and removes those. So, so now prisoners can spend maximum amounts of time in pre-release custody. It's actually the, the earlier House-passed version of the bill only included pre-release custody, and then supervised release was then added, but with G3's limitations to say, you know, supervised release is added, but there are these restrictions under G3 in replacing that 12-month limit. What, what the district court's decision does is say that the two sentences at Section 3632D4C mean two very different things. And the, the first sentence does not reference 3624G, which are those guardrails in place. And so, you know, I think one of the results that could happen from the decision is that, you know, you have high-risk prisoners that are earning 10 credits per month, but unable to apply them by virtue of the limitations set forth in 3624G. And so, theoretically The earlier provision on, on eligibility for the timed credits earned contains all of the limitations as to dangerous sentences and, and, and the like. Why wouldn't that be time credits? I mean, referencing time credits, why wouldn't that fold in those eligibility requirements? Your Honor, just to understand your question, are you, are you referring to prisoners that are, are statutorily ineligible to earn time credits under 3620, 3632D4D? Yes. Yeah. So, so there, there are certain individuals that, that cannot receive and earn time credits. However, you know, I've seen prisoners that have been convicted of solicitation of a minor with very long sentences, 10-year terms of supervised release, and, and that is not an ineligible offense. And under the district court's decision, those individuals could be, you know, potentially never earn a low or minimal risk, earn 10 credits per month for their entire term, and have a heap of credits, and then potentially be reduced to supervised release, only to have their entire term of supervised release removed because they were never able to apply them while they were in prison, but they earned them. So, so, I mean, in a way, you're saying maybe Congress didn't include enough serious crimes within its ineligibility criteria. No, you're, I don't think, I don't, I think, I think the point is that Congress envisioned that the BOP would be looking at these low and minimal risk thresholds and allowing, you know, certain prisoners to be able to earn them, but, but had specifically in mind the, the limits of being able to apply them if they never earn that low or minimal risk, and they're high or medium risk, they can apply those. But those guardrails only, you know, under the district court's interpretation, only apply to the, to the second sentence, which governed in the district court's interpretation, transfer to pre-release custody or supervised release. All right. Thank you. Thank you, Your Honor. All right. We'll now hear from Mr. Wilson. Good morning. May it please the Court. My name is Charles Wilson. I'm from the Federal Defender's Office in the District of Connecticut. We were appointed to represent Mr. Rivera-Perez. I think it was actually after Judge Underhill had granted his request for relief. I filed a responsive brief that, you know, quite frankly, rode heavily on Judge Underhill's decision. And then we also saw some additional decisions come in, particularly the one from the Ninth Circuit in Gonzales, and then also the Hargrove decision from the Sixth Circuit, which includes a very meaty dissent, I believe, from Judge Moore. So we have a circuit split. So I think we already have one, no matter what you all decide to do. There was a decision elsewhere that was, I think, maybe an unreported decision, and it was a pro se party. So I don't know that that got us there. But we already have the circuit split. And in looking everything over, you know, I'm grateful Attorney Meskel and I are not necessarily going to fight about what the meaning of tort is. But you would agree it's ambiguous. It depends on the context, right? You have to look at the words around it, Your Honor. There's no way not to do that. So why is the Sixth Circuit's view where the first sentence refers to how you can earn them, what you can earn them for, and the second sentence says who's going to do it, the Bureau of Prisons is going to do it according to these criteria under 3624G? It doesn't seem like it's surplusage to me. The first sentence explains what they are to be used for, and then the second sentence explains who's doing it under what criteria. What's wrong with that? Well, I don't fully agree with your picture on the second sentence, but I agree the idea is not to have surplusage, right? Every word's got to matter, and every word's got to mean something. The second sentence to me, as someone who's dealt with the Bureau of Prisons countless times and getting people out of prison early or dealing with their issues, the second sentence is telling the Bureau of Prisons you are the physical mover of these people. Under certain criteria. So under certain criteria. But it's your job to move them. So if they qualify, you need to get them to that pre-release place. Under the district court's reading, the first sentence, you would agree that under district court's reading, the second sentence deals with moving people up to transfer earlier, and the first sentence refers to reduction, right? Under the district court's interpretation. Right. So under that interpretation, there's a reduction in the supervised release time by some unknown entity who's not named, presumably it's the probation department, probation office, right? Assuming working with the district court judge, I would say. But yes. Where does it say that, working with the district court judge? I would just say, in my experience, the probation office is likely to read out to the district court judge and say this is happening. Wouldn't Congress identify a procedure for that reduction other than implicitly probation is going to reach out? Here, Judge Underhill had the Bureau of Prisons reach out to the probation department. Under current law, the only entity that can modify a term of supervised release is a court. Correct. I agree, Your Honor. All right. This would be doing something pretty drastic under current law, allowing a probation office to reduce the term of supervised release, presumably reaching out to the district court. But even more importantly, as the government points out, Congress set up a whole framework for assessing low or moderate recidivism risk to move up the date of either pre-release custody or supervised release. Under this framework, there's no criteria for doing that. Everybody, other than the enumerated crimes, which Judge Nathan pointed out, you're ineligible to earn the credits at all. Unless you fall into one of those, you could earn unlimited credits and have your entire supervised release term eliminated. So the Bureau of Prisons determines you're such a high risk of recidivism because you dealt fentanyl, which wouldn't be an enumerated crime. You could earn the credits. Even, I think, with a firearm, you could earn the credits. And we're not going to release you early because we think you're too dangerous to be released early. Yet that person, when their time was up, would have potentially no supervised release term at all under this reading. Is my reading wrong? I have two disagreements. First of all, they have to earn the credits. That's part of it. That's discretionary? A discretionary award of credits that may be awarded is the textual language? Right. So they have to earn those credits through the program. It has to be signed off by the Bureau of Prisons. If no credits are earned, that person's not moving in. If they take the program, they can deny them the credits? They take the programs? They complete the programs? So they still have to do an assessment in the end. But I understand your point is you do the credit, you get the program. By and large, that's how it's going to work. But also the idea that random people with violent backgrounds are going to be released is well precluded by that list of offenders. I just gave you an example of one that's not precluded. Someone who dealt fentanyl for years, are they precluded by that list? And so drug dealing? They're not a leader. If they're a leader, they're precluded by the list. But assuming they weren't a leader, they could have dealt drugs. They could have smuggled drugs into the jail while they were in jail and still took those courses and earned those credits. And they would get a reduction or elimination of their supervised release term under your reading. And so I don't know that they would, necessarily, under my reading. Because we also, we have two areas we could suggest that there are possible caps. We see caps of 12 months, both as to the maximum amount of time you're allowed to get of pre-release and the maximum amount of time you can get reduced from the sentence. I don't know that that wouldn't be read into the statute in deciding the possible lengths of it. Also, the point of my... Is there an implicit limit on how much of a reduction of your supervised release term you could get? I could see a judge reading that into that based on everything else in the statute. And that goes back also to my point about the probation office being involved. Which is, your point, a judge is the only one that can reduce someone's time of supervised release. There's no disputing that. I don't think the government will dispute that. So, but ultimately, that means that a judge, at some point, is going to be assessing this situation. Well, hang on. I want to dispute that. So, I'm thinking about the parallel context of good time credits. So, I'm a district judge. I sentence somebody to 60 months incarceration followed by three years of supervised release. They go in, they earn good time credits. They don't come back to me to release them early, right? Because the idea of credits is that you've kind of served that credit time. Isn't that how it works normally? So, good kind of time, that's definitely how it works. Yeah. And so, it seems to me it would work the same. And when somebody's released from BOP custody to the probation officer, BOP communicates to the probation officer, here's the length of supervised release, and here's the term of supervised release, and here's the release date. And probation then does a calculation for the date on which supervised release terminates. And so, as I understand this, it's not that hard to administer. All that BOP would additionally have to include is any remaining earned credits. And so then, just like probation currently calculates termination of supervised release date, it would calculate termination of supervised release date taking into account available credits, right? Why would a judge need to be involved in that but not involved in actual release from incarceration pursuant to these credits? Well, I go back to your colleague's point, which is that a judge is the one that ultimately has to administer that. So, there has to at least be a so-ordered moment. No, that wasn't my point. My point was the opposite, that the judge is not going to do this. That your Congress is implicitly, according to the district court's view, authorizing probation offices, as Judge Nathan pointed out, to just get the number of leftover credits from the Bureau of Prisons and then, on their own, reduce the sentence. Because there's no criteria for any assessment that you're talking about. You're talking about a judge making an assessment. No judge is going to make an assessment under this view. Probation is going to do it automatically, and they're not going to make an assessment either. They're just going to see how many credits are left over. That seems pretty odd, that Congress would have created a regime where they have all these criteria if you're going to move up the release date, and no criteria for actually reducing the supervised release term. It just doesn't make any sense. And my point, counsel, is that's precisely the regime we have now, sort of unquestioned, for release from actual incarceratory sentence. As I understand the good time credits, Congress didn't say, here's what you have to do. You know, you go to a judge, or you evaluate. It's just if, under the discretion of BOP, good time credits are awarded. Good time credits. An actual incarceratory sentence. So as a district judge, I write 60 months. It isn't 60 months, and that's done entirely by BOP. And as best I can tell, without any explicit instructions from Congress as to how to go about doing that, other than 362.4a, a prisoner shall be released by the Bureau of Prisons on the date of expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence provided in Section B. And then Section B is credit toward service of sentence for satisfactory behavior. And there's no other sort of implementing instructions from Congress as to how to do that. And it seems to me that's just parallel with how this works in terms of reduction of time in supervised release. So a couple thoughts. One is, in terms of how this is all implemented, my understanding of what we have is, first, this idea of reducing supervised release, that's going to be the third possible thing that happens. It's going to first be, does the person get to a halfway house or a home confinement earlier, pre-release custody? Do they get a reduction on their sentence earlier? So now you're talking about two years of credits that will have to have been earned. That's going to affect the idea of more supervised release time being beyond that having entitlement to credit. That's only going to happen in a lesser number of cases, albeit longer sentence cases, so that you have the time to actually earn the credits. So if we're talking a three-year case, I think this conversation is academic, because that person is not going to get the benefit of what we're talking about here. I will say this. Let's say everything I've said so far is wrong, and everything the panelists have said is a correct prediction, or correct pointing out what is an absence. The FIRST STEP Act, in part, is a movement, is a remedial statute that is meant to move the power of rehabilitation back into the prisons, so that the prisoners have access and incentive to make changes, to engage in programming, to improve their situation, to make them the most ready that they can be as possible. So the need for supervised release is less. I'm sorry. I grant you. Earning time credits means participating in programs that make it acceptable for society, for people, to leave the prison system and various levels of custody earlier. But even if those credits are earned, and they can accelerate the time toward pre-release custody, and accelerate the time toward supervised release, that acceleration in each instance is subject to a finding by the Bureau of Prisons as to the likelihood of recidivism, correct? But who's going to make that decision under the regime that you are advocating, and that the district judge found? Who makes that decision with respect to supervised release? Other than the things that are built in that we've already hit upon, about the list of exclusions for certain types of offenses, which is a pretty long list. I'm talking about a very specific finding that is built into the system that assures that people who are at high risk or moderate risk for recidivism don't get the benefit of these credits for the purpose of accelerating their release from custody. I mean, they get the benefit of the credits. They've taken courses that are designed to facilitate their return to productive life after prison. It's not a waste. But to be used, there has to be a finding. The system requires a finding that they are at low risk of recidivism, and I don't know who makes that decision if those credits can then be used for reducing the term of supervised release. Your Honor, I think my best answer to that, and I know I'm well over time, is based on Gonzales, based on what we see in the decision we have with Judge Underhill, based on the minority decision in the sex circuit. What's the answer? I'm sorry? What's the answer? Well, these are all things that I'm assuming that they've considered that are built in. I understand it's not the strongest point that I can make on it, I suppose. In the end, there is an aspect of credits is credits. I just want to point out, because you pointed out, the people who are going to earn the most credits will most likely be able to either substantially reduce or completely eliminate their supervised release term. People who have the longest sentence, who presumably had the more serious crimes, and they're going to be the ones, like Congress, a supervisory is supposed to be a support system for people getting out of jail. It's also to make sure they don't return to criminal activity, but it's a support system. So those individuals with the more serious crimes and the longer sentence are going to be the ones who have enough credits to have their supervised release terms potentially wiped out for what looks like three years. And those people tend to have the longer terms of supervised release. The government referenced the idea of contact with a minor. In my child contact cases, no one gets three years of supervised release. You know, they get long terms. And the ability to wipe out a, say, 20-year term of supervised release, which I had handed down not long ago, you know, the gentleman I have in that case, that's not going to happen. There's a lot of crimes that are pretty serious that get three years of supervised release that are not ineligible under that list, I could give you some. You could have a gun possession case where the gun goes off and it could be a very serious event. I'm not saying it's not possible, but the idea that all of those people are just walking out with no supervised release, I can't accept that either. And in terms of those support services, I guess I thought the idea was those are sort of shifted earlier. You're providing sort of vocational training or drug treatment or whatever the classes are that allows one to potentially earn at BOP discretion the credit for earned time credit. Those support services essentially are being shifted into the incarceratory environment. I believe that's the idea, Your Honor. Yes, and I do hear about it increasingly from my clients. The whole idea of the First Step Act is to alleviate a fairly draconian system of sentencing. And there's really two ways to look at whether time credit should be applied to length of supervised release. One is if you've taken these credits and you've gotten these credits, you've taken these courses in how to reenter society, it should be sensible to reduce the time that's spent in supervised release because the person is already pre-prepared for release. But the other way to look at it is that these courses that yield the time credits are designed to facilitate return to non-incarceratory, non-supervisory, free life in society as we all enjoy. And therefore, a period of supervised release is exactly what people need. In other words, a period of supervised release reinforces and serves the same purpose as the time credits so that one could argue that using the time credits to reduce the supervised release is a contradiction in the system. I don't know if I'm making myself clear. No, I think you are. I think there is some, you know, this back and forth. And one thing that just occurred to me now, to push back on the idea that people could get just wiped out is, and I know you'll correct me if I'm wrong, but a judge normally can't end a person's supervised release before the first year is complete, right? We can't ask for early termination until we hit day 365 or 366. I don't know why a judge would be able to do that in a case like this based on credits. That's, I think, a conflict that may exist in the law that may pop up. If this idea that we're supporting goes forward. But supervised release for some clients, it's great. I'm not going to say that it isn't helpful. It's terrific. But as my clients come out of prison more and more prepared to be back in society, have these windows of time which either in the halfway house or they make it to their family's house, those are really the critical moments, you know, quite frankly, is to see once the person is out on the street, so to speak, what are they doing? What are the choices they're making? The better prepared they are by having the programs beforehand, the more successful they're going to be. You know, and it just becomes, supervised release just becomes another way to be tethered to the system. You know, and it doesn't have, and the benefits of it become less and less. So I'm not used to being the appellee, so I've well overdone my time. And if you have any further questions, I'll take my seat. Thank you. You had to find red paper somewhere. All right. Go ahead, Mr. Meskel. You have three minutes to rebuttal. Thank you, Your Honor. I would just like to address a couple things. So, you know, I think there is a way to address those who are rehabilitating through a tailored and specific manner, and that's through a 3583 motion to reduce the term of supervised release that my friend on the other side mentioned without being an over-inclusive and improper statutory construction read into the FSA. And I think some points I think were listed in the previous discussion that the FSA did not amend Section 3583E under which the district court can modify the term of supervised release. It didn't provide that operational directive to implement the reduction of supervised release. It doesn't require, the statute doesn't require the VOP to inform probation or any other unnamed entity of a prisoner's time credits upon transfer to supervised release. Isn't that, just to go back to my question, isn't that the same way it works now with termination of supervised release? That is to say, a probation officer gets the date of release from VOP and they get the length of period of supervision imposed and they calculate a termination date. Right? You're right, Your Honor. But without any benefit of threshold assessments for the prisoners that's earning 10 credits a month, that's a high risk. And if a prisoner has a 20-year sentence, presumably they can get 10 years' worth of credits in that time period. My math may be wrong on that. I understand. But can I ask you just textually? I think there's agreement generally about the ambiguity of the word toward. But for me, the language that feels less ambiguous is the time in. So toward time in. How does that square with your reading of the text? I think it squares well with the text. I think we give an example in our reply brief where you can basically have a store of value that can be applied towards something in the future. And that was from Orr v. The City of Albuquerque, where people that accrued sick leave could apply that toward early retirement. And obviously, that accrued sick leave would not be applied to reduce early retirement. You took out the words I'm asking about. Toward time in. So you just gave me an example using the word toward. And I agree, there's ambiguity on the word toward. But this sentence is, shall be applied toward time in pre-release custody or supervised release. Correct. It accelerates their time in those programs. So it accelerates the amount of time it takes to get into those programs for supervised release. Their time in those programs comes earlier by up to one year. I guess I want to add now, applied. Applied toward time in. That sentence just, I understand the ambiguity of toward, but naturally reading those together sound to me like reduction. Well, yeah, I think the district court gave the example of a credit towards, store credit, I believe. I think you can, you know, that's a non-temporal example, but I think you can find many temporal examples that mean the opposite. So for instance, if you use an ATM and your bank gives you a credit towards that ATM transaction, it's not going to reduce your bank account. It's going to increase it. Yeah. And again, it's not parallel because it's not using the words. But the ones I, you know, if I give you, if Judge Bianco gives you credit toward time in your rebuttal argument, I don't think anybody would interpret that to mean we're going to get to your rebuttal argument sooner. Well, and I think that's, you know, I think one of the points we highlighted at section 3624B1 is, you know, that refers to toward the completion of service for a prisoner's sentence. And that, you know, all prisoners are obviously, you know, anybody that applies to is already serving their sentence. And so obviously it refers to that, to that acceleration. And to further to that point is the original version of the bill that was passed in the House only included pre-release custody. And so if it was toward time in pre-release custody, it gets back to that point is how does that fit? If it's to reduce pre-release custody, again, it would be to prisoners' disadvantage. Why wouldn't that just mean you get to supervised release sooner? So if you're in pre-release custody, so you're released from incarceratories, you're in pre-release custody, and then you reduce that, you reduce that further, you're in supervised release sooner, and then you, you know, there's three stages. There's in-custody incarceration, there's pre-release custody, and then there's supervised release. Assuming the prisoner has it. You can imagine a scheme which allows for reduction in all three of those, right? You move sooner to pre-release custody, you move sooner to supervised release, you move sooner to termination of supervised release. Your Honor, I think, I think the, the idea though that, that the, it's only the second sentence that causes pre-release custody to be reduced, and the first sentence goes back to that, that would truly be superfluous if those, if that's what those two sentences meant when, meant when read together. All right, the time towards your rebuttal is up. Thank you, Your Honor. Thank you both for the argument. We'll reserve the decision. Have a good day.